UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

PINNACLE ALLIANCE GROUP,                    Case No. 6:15-cv-451-AA
LLC, a Washington limited
liability company,                          OPINION AND ORDER

        Plaintiff,

   v.

AMBIENT ARCHITECTURE LLC dba
ASCENT ARCHITECTURE AND INTERIORS,
an Oregon limited liability company,
SETH E. ANDERSON, an Oregon citizen,
and KRISTA APPLEBY, an Oregon citizen,

        Defendants.

_____

JEFFREY M. EDELSON
Markowitz Herbold PC
1211 SW Fifth Ave. Suite 3000
Portland, OR 97204-3730
    Attorney for Plaintiff

ROGER A. LENNEBERG
DAVID H. BROWER
Jordan Ramis PC
Two Centerpointe Dr. 6th Floor
Lake Oswego, OR 97035
    Attorneys for Defendant;

AIKEN, Chief Judge:

Pinnacle Alliance Group, LLC ("plaintiff") brings this action for copyright infringement against Ambient Architecture LLC dba Ascent Architecture and Interiors, Seth E. Anderson, and Krista Appleby ("defendants"). Defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons that follow, defendant's motion is denied.

## BACKGROUND

Plaintiff is a Washington-based company who hired an architecture firm to prepare plans for a senior housing facility planned for Sisters, Oregon on McKinney Butte Road ("Site"). Plaintiff's Second Amended Complaint ("Pl.'s Compl."), ¶¶ 1, 6. Plaintiff owns the full rights to the plans in question. Id. The plans are registered by the United States Copyright Office as "architectural work" and "technical drawings." Pl.'s Compl. ¶8. The U.S. Copyright Office's certificates for the plans are dated February 24, 2015, with first publication on April 3, 2012. Id.

Defendants are an Oregon limited liability company with offices in Bend, Oregon, as well as two of its employees. Defendant Anderson is the principal architect for the company, while defendant Appleby is the project architect for the Site. Pl.'s Compl. ¶¶ 2, 3, 4.

Plaintiff "lost its opportunity" to proceed with the project

Page 2 - OPINION AND ORDER

in August 2013. Pl.'s Compl. ¶12. Plaintiff alleges that defendants were provided plaintiff's plans prior to groundbreaking for the project. Pl.'s Compl. ¶13. Later, defendants prepared plans for the project Site. Pl.'s Compl. ¶14. Plaintiff contends that the defendants' plans "are substantially similar to and clearly derived from" plaintiff's original plans such that they constitute infringement in violation of the Copyright Act, 17 U.S.C. § 501. Id., ¶18.

## STANDARD

Under Fed.R.Civ.P. 12(b)(6), a complaint is construed in favor of the plaintiff, and its factual allegations are taken as true. Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 563 (2007).

Page 3 - OPINION AND ORDER

When considering a 12(b)(6) motion, the scope of review is generally limited to the parties' pleadings (the complaint and answer.) See, e.g., Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001). However, a court may consider materials that are attached to the complaint and materials upon which the plaintiff's case necessarily relies, assuming the authenticity of the documents is not in question, and there are no disputed issues as to the documents' relevance. Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). In copyright infringement cases, the works themselves may be incorporated by reference into the complaint. Erickson, 839 F.Supp.2d at 1135; see also Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010) ("[i]n copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings") (citations and internal quotations omitted).

## DISCUSSION

I. The Pleadings

Attached to plaintiff's Second Amended Complaint are two Exhibits. Exhibit A contains 35 pages of architectural plans and diagrams which are purportedly plaintiff's copyrighted plans for the Site. Pl.'s Compl. ¶10. Exhibit B consists of eight pages of architectural plans and diagrams which are purportedly defendants' infringing plans for Site. Id. at ¶15. Defendants do not question

Page 4 - OPINION AND ORDER

the authenticity or relevance of Exhibits A and B. Accordingly, the exhibits are incorporated by reference. Coto Settlement, 593 F.3d at 1038.

Defendants' Memorandum in Support of its motion includes four exhibits, purportedly architectural plans and diagrams of both of plaintiff's and defendants' designs for the Site. However, defendants' inclusion of the plans goes outside of the pleadings, and the court therefore declines to consider them. Exhibits A and B, as incorporated by the Second Amended Complaint, are sufficient representations of the works at issue.

In addition to an opposition to defendants' motion, plaintiff submitted declarations of Donald A. Crosby and Mark Adolf, with six corresponding exhibits. These declarations and exhibits go beyond the pleadings. Moreover, defendants dispute the relevance of the declarations. Thus, the court similarly declines to consider plaintiff's declarations and accompanying exhibits. Coto Settlement, 593 F.3d at 1038; Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994) ([u]sing analytic dissection, and, *if necessary*, expert testimony, the court must determine whether any allegedly similar features are protected by copyright) (emphasis added). To the extent plaintiff references the declarations and exhibits in its arguments relative to the instant motion, the court will refer to Exhibits A and B as incorporated by Plaintiff's Second Amended Complaint.

II. Copyright Infringement

Copyright protection exists in order to preserve an author's rights to original works of expression. See 17 U.S.C. § 102(a). In order to establish copyright infringement, plaintiff must prove (1) ownership of the copyright; and (2) copying by defendants of "the constituent elements of the work that are original." Feist Publ'ns, Inc. V. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991). Plaintiff's ownership of the copyright is not disputed. To prove that defendants copied the work at issue, plaintiff may rely on circumstantial evidence that (1) defendants had access to the copyrighted work; and (2) there is a substantial similarity between the copyrighted work and defendants' work. Sid & Marty Krofft Television Prods. Inc. v. McDonald's Corp., 562 F.2d 1157, 1162 (9th Cir. 1977). Plaintiff has alleged facts that could establish defendants had access to the copyrighted material. Thus, the remaining question before the court is whether the complaint states a plausible claim that the copyrighted work and the allegedly infringing work are substantially similar.

Substantial similarity is established by demonstrating that the alleged infringing work is both objectively (extrinsically) and subjectively (intrinsically) similar to the copyrighted work. Id.; see also Erickson v. Blake, 839 F.Supp.2d 1132, 1135 (D.Or. March 14, 2012). While the subjective/intrinsic test is typically reserved for a jury, the objective/extrinsic test may be decided as

a matter of law. Id. at 1135-36 (citations omitted). The extrinsic test involves analytically dissecting the works at issue to evaluate similarities on an element-by-element basis. Apple Computer, 35 F.3d at 1443.

Even when a work is protected by copyright certification, not every individual element of the work is necessarily protected. Feist, 499 U.S. at 348. Rather, copyright protection extends only to the "components of a work that are original to the author." Id. Therefore, in undertaking an element-by-element comparative analysis of two works, the court must distinguish between protected and non-protected elements. Apple Computer, 35 F.3d at 1443. Unprotected elements of a copyrighted work may include:

(1) ideas (as opposed to the expression of ideas);

(2) expressions that are indistinguishable from ideas;

(3) standard or stock elements; or

(4) facts and other public information.

Erickson, 839 F.Supp.2d at 1136.

Perhaps the most important, and most challenging, aspect of determining whether infringement has occurred is that a copyright protects only the expression of ideas, not the ideas themselves. 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery[.]"). Additionally, when a non-protectable idea can only be expressed in

one manner, the resulting expression is not protected by copyright, because the expression is essentially indistinguishable from the underlying idea. Erickson, 839 F.Supp.2d at 1137 (citing CDN v. Kapes, 197 F.3d 1256, 1261 (9th Cir. 1999)). Expressions that are standard, stock, or common elements of architectural design may not be protectable in isolation, but may be protectable when constituent standard elements are arranged in novel ways. Satava v. Lowry, 323 F.3d 805, 810 (9th cir. 2003); see also Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 103-04 (2nd Cir. 2014) (architectural designs "like the Guggenheim, will include standard features, but also present something entirely new").

After the court has identified which of the alleged similarities relate to unprotected elements, it can determine the appropriate scope of the copyright. Erickson, 839 F.Supp.2d at 1138 (citing Apple Computer, 35 F.3d at 1443). "If few similarities remain after the unprotected elements are set aside . . . the scope of the copyright is 'thin,' which means that it only protects the copyrighted work from virtually identical copying." Id. Alternatively, "[i]f many of the similarities relate to protected elements . . . then the scope of the copyright is 'broad,'" such that it is "easier" to demonstrate that two works are substantially similar. Id.

//

//

Page 8 - OPINION AND ORDER

III. Evaluation of the Instant Plans

A. Scope of Protection

Plaintiff argues that the scope of protection for their footprint is broad, because "[l]arger, more complex buildings . . . receive greater protection than simple structures." Pl.'s Br. 20 (citing Ronald Mayotte & Assoc. v. MGC Building Co., 885 F.Supp. 148, 153 (E.D.Mich. 1994)). The court disagrees with plaintiff that the size of a structure is a factor in the breadth of copyright protection; however, complexity is often a factor, as complex designs allow for more opportunity for an architect to create original expressions. Indeed, simple structures, such as a single-room log cabin, will include standard features presented in a standard manner, whereas an architectural work such as the Guggenheim Museum is a complex amalgamation of standard and novel features, arranged in unique ways. See Zalewski, 754 F.3d at 103-04.

Initially, the court notes obvious similarities between the structures designed by the parties. For example, plaintiff's front elevation drawings depict a wide, single-story structure, topped with several gabled roofs, with the largest gable at the center above the main entrance, which itself is covered by a port cochere.[1] Ex. A-1,21. Similarly, defendants' design depicts a wide,

_____

[1] A porte cochere is defined as "a roofed structure extending from the entrance of a building over an adjacent driveway and sheltering those getting in or out of vehicles."

single-story structure, also topped by a number of gabled roofs, the largest at the center over the main entrance, which is also covered by a port cochere. Ex. B-6,7. However, the front elevations are not identical; there are differences in the relative size of the gabled rooftops, the orientation of the center gables, and the locations and sizes of windows along the front of the structures.

However, plaintiff does not take issue with the similarities described above in its response. Rather, the crux of plaintiff's argument is the alleged similarity between the two architectural "footprints." Exhibit A includes various versions of plaintiff's Site footprint, which consists of five symmetrical wings (or "pods" per the parties' parlance) connected by corridors. Ex. A-2,4,6,16,28. The central pod includes the entrance area, two pods on either side sandwich the central pod and connect to it via a wide but short hallway or passthrough, and the two outside pods then connect to the middle pods, each by narrow corridors. Id. Other characteristics of the plaintiff's footprint are the central pod is shorter than the other 4 pods, and the outer pods each have their own "hammerheads" at the top and bottom that extend away from the center of the structure. Id. Plaintiff describes the shape of its footprint as that of a "starship:" "[plaintiff's] design is . . . original in that the 5-pod layout arranges the pods so that

Merriam-Webster Dictionary, available at
http://www.merriam-webster.com/dictionary/porte%20cochere (last visited September 8, 2015).

they are adjacent and roughly parallel . . . there is no doubt that [the] arrangement is a novel and highly expressive motif." Pl.'s Br. 19.

Defendants' footprint plan is included in Exhibit B. Ex. B-1,4,8. Defendants' design consists of pods arranged in a similar way, with a central pod sandwiched between to middle pods, and then an outer pod, each interconnected by corridors. Id. The footprint appears to be oriented on the Site relative to McKinney Butte Road in the same direction and roughly the same location as plaintiff's footprint. Notably, the plans incorporated into the complaint show that defendants' plans appear to include only four pods. Id. However, plaintiff contends that defendants' design will ultimately include five pods at an unspecified time the future, a point defendants do not contest.[2] Defs.' Reply 8. Construing the issue in favor of plaintiff and assuming the factual allegation is true, the court finds for this motion that defendants' design indeed includes five pods. Additionally, the court accepts  as true plaintiff's contention that the widths of the footprints are identical when measured from the center of the outer pods; and that the pods, though different shape and size, are situated at essentially the same location on the Site. Pl.'s Br. 3, 17.

_____

[2] The court notes that careful inspection of Exhibit B-8 reveals what may be the very faint outline of a fifth pod in defendants' design.

Plaintiff posits the design motif of its architectural footprint make it the "Guggenheim" of senior living facilities. Pl.'s Br. 21. The court agrees that plaintiff's design shows complexity. Rather than a single rectangular building, the plan includes the five aforementioned pods. The placement of the pods on the Site is symmetrical, an arrangement which is arguably an original expression. Hallways connect the pods, which are also symmetrical. The outside pods have "hammerheads" which provide further symmetry, and depart from the simple box-like shape of many buildings. Indeed, the outside pods connect to the central pods in a fashion reminiscent, in plaintiff's view, of a "starship." Pl.'s Br. 19.

Defendants contend that "naming a simple arrangement of five rectangular buildings connected by corridors a 'starship' or some other fanciful term does not make a simple arrangement protectable." Defs.' Reply 2. The court agrees that denoting the design a "starship" is irrelevant to copyright protection. However, defendants err in arguing that an arrangement of standard shaped buildings is not protectable; as noted *supra*, it is a basic tenet of copyright law that even standard components, when arranged in a unique way, may warrant protection. See Zalewski, 754 F.3d at 104 ("Every work of art will have some standard elements, which taken in isolation are un-copyrightable, but many works will have original elements-or original arrangements of elements.").

Page 12 - OPINION AND ORDER

Defendants further argue that plaintiff "fails to identify any precedent that a simple two-dimensional figure, comprised of basic shapes, can be sufficient in and of itself for copyright protection of architectural works." Defs.' Reply 2. Essentially, defendants contend that plaintiff's architectural footprint is not protectable because it is a "simple geometric shape." However, defendants' opening brief explains "[p]laintiff's plan is very proportional and symmetrical with connection near the center . . . [whereas] [d]efendants' plan calls for a more odd shape that has multiple protrusions and indentions [sic] . . . the *protected expressions* are just substantially different." Defs.' Br. 15 (emphasis added). The court understands that the arguments are aimed at different aspects of copyright law (i.e. originality versus copying), but defendants cannot persuasively argue that the "starship" design is a simple, unprotectable geometric shape while simultaneously contending the footprints represent substantially different, protectable, expressions.

Moreover, defendants' reliance on Oravec v. Sunny Isles Luxury Ventures, L.C., 469 F.Supp.2d 1148 (S.D.Fla. 2006) is unavailing. Defendants argue Oravec supports its contention that plaintiff's design is not protectable because "copyright will not protect the mere idea of a convex/concave building, any more than it would protect the idea of an arch or dome or tower." Id. at 1165. Defendants, despite quoting the entire passage, fail to track the

remainder of the court's analysis, which explains "this does not mean that the particularized expression of a dome, arch, or tower . . . cannot be protected within the context of a particular design." Id. While the concept of an arch, dome, or tower cannot be protected, the particular expression of an arch, dome, or tower can be protected so long as it is an original expression. Id. Accordingly, Oravec held that the plaintiff's expression of concave and convex portions of its architecture were protectable due to their unique "concrete manifestations."[3] Id.

As in Oravec, plaintiff's design consists of non-protectable elements: (1) a series of buildings; (2) buildings of rectangular shape; (3) connecting corridors between buildings; and (4) a symmetrical layout. Like Oravec, the particular pieces of the design are not individually unique; however, when the components are arranged in a novel fashion, in this case the "starship" design, the manner of the arrangement is arguably protectable. Defendants contend that the "starship" design is a simple geometric shape, presumably along the lines of a circle, rectangle, or octagon, as discussed in Oravec. Id. Plaintiff's "starship" is cnot a simple or standard shape, but rather the result of a combination

_____

[3] Although the court found the concave/convex concepts protectable as expressed, it nonetheless found no substantial similarity in designs, as "the similarities between the competing designs exists only at a conceptual level." Id. at 1172. These findings were upheld on appeal. See Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d 1218 (11th Cir. 2008).

of geometric elements. The "starship" design, contrary to defendants' argument, is roughly the equivalent of the integration of non-protectable shapes that were found to be protectable in Oravec.

The parties disagree as to whether a building footprint is *per se* protectable. Plaintiff's contention that Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505 (4th Cir. 2002) stands for the proposition that an "assisted care facility's footprint is protected" is inaccurate. Pl.'s Br. 3. The district court decision underlying the damages awarded in Nelson-Salabes found that the building footprint, along with other distinctive elements, created a unique design. Nelson-Salabes, Inc. v. Morningside Dev. LLC, available at 2001 WL 419002, *4. Nonetheless, defendants' contention that Nelson-Salabes "holds that the footprint is not protectable and needs to be combined with other elements" is also inaccurate. Defs.' Reply 5. The district court did not rule on whether the footprint alone was protectable; instead, it found that "bay windows" and an "octagonal entrance" were not individually protectable, and that the combination of elements, including the footprint, was protectable. See id. This case does not offer any conclusion regarding whether a footprint is protectable.

The parties' opposing interpretations of Sparaco v. Lawler, Matusky, Skelly, Engineers LLP, 303 F.3d 460 (2nd Cir. 2002) are similarly inapposite. The court agrees with defendants that the

case does not hold that a building footprint is protected. Pl.'s Br. 9. However, defendants' argument that the case supports the proposition that "general indications of shape and placement" were not protected is also inaccurate. Defs.' Reply 6. Sparaco held that a plan for the preparation of a site was protectable because it included sufficiently specific expressions of components, including building footprint, parking lots, elevation renderings, and landscaping. See id. at 469. As in Oravec, the Sparaco made no specific findings regarding the protectability of building footprints alone.

The court further agrees that the additional cases plaintiff proffers in support of its contention that "footprints are protected" are not dispositive. In Bruemmer v. Reardon, available at 2012 WL 5989355, *7 (W.D.Mich. November 29, 2012), the court found that "similarities in the footprint, the roof lines, and the room layouts" presented an issue of material fact in a summary judgment motion. Id. The court's finding, therefore, was focused primarily on substantial similarity rather than unique expression. However, to the extent the court found that the similarity in the footprints created an issue of material fact, it follows that some aspect of the original footprint was a unique expression which was allegedly copied, and therefore must have been protectable. Id. The other cases relied on by plaintiff similarly do not stand for the proposition that footprints are necessarily protected. See Pl.'s

Br. 9.

The key inquiry for copyright protection is whether an element of a work is sufficiently attributable to its designer based on its unique expression, even if the expression is the unique arrangement of standard elements. Zalewski, 753 F.3d at 103-04. As noted above, it appears that defendants appear to agree plaintiff's footprint design is composed of at least some "protected expressions." Defs.' Br. 15. Moreover, contrary to defendants' assertion, plaintiff's plan is not merely an outline, but rather includes many other details pertaining to the interior makeup of the proposed retirement center, including floor plans, parking, and landscape features. Ex. B-4,5,6,7,8; see also Sparaco, 303 F.3d at 468-69.

Further, when analyzing the scope of copyright protection for architectural plans or works, courts have also evaluated external factors that may impact a design. Zalewski cexplained that "design elements attributable to building codes, topography, structures that already exist on the construction site, or engineering necessity" should not be protectable for policy reasons. Zalewski, 754 F.3d at 105. Additionally, recognizable styles of architecture (e.g. neoclassical government structures, American Craftsman bungalow homes) contain characteristic elements and characteristic element arrangements that, due to market expectations and ubiquity, do not warrant protection. See id. at 105; see also Gaito, 602 F.3d at 55. The rationale is that when external constraints dictate

certain expression of elements, those expressions cannot be said to originate with the architect, and therefore are not protectable. 17 U.S.C. § 102(a) (copyright law protects only aspects of a work that originate with the author). Thus, where there are few external constraints on an architectural work, the protection for the work will be broader. See Apple Computer, 35 F.3d at 1442-43; see also Erickson, 839 F.Supp.2d at 1138. Alternatively, where an architectural work is constrained by virtue of its particular style, geography, or municipal regulations, the protection will be thinner. Id.

Here, there are few external constraints on plaintiff's design. Defendants do not dispute plaintiff's assertion that there are no topographical constraints which would require defendants to place their footprint virtually on the identical location of the Site. Pl.'s Br. 17. Defendants have not alleged that the building footprint, or any other feature, has been substantially affected by municipal building codes. Similarly, the parties have not argued that preexisting structures are an issue.

With regard to the architectural style depicted in the plans, defendants do not contend that there are particular market expectations for how a retirement center should look or feel, or that have influenced their design. Nor do defendants argue that the architectural plans are burdened by any architectural style requirements. Essentially, defendants have not presented any

cognizable argument supporting a thin scope of copyright protection due to external constraints of the Site.

For these reasons, the scope of protection for plaintiff's design is broad, and plaintiff has provided a plausible claim that its design, and particularly the architectural footprint element, is worthy of copyright protection. There may yet be other elements of plaintiff's design that also warrant protection; however, for purposes of the instant motion, the court need not address every possible protectable element.

B. Copying

As described above, the parties' plans include a number of similarities and differences. Perhaps the most striking similarities are seen in the parties' architectural footprint designs (five roughly symmetrical pods connected by corridors) and nearly identical placement upon the Site. Nonetheless, there are differences between the designs, also explained herein. For example, plaintiff's outside pods have "hammerhead" shapes, while defendants' outer pods do not. The pods do not share precisely the same outline, though both are roughly rectangular, nor are they exactly the same size — plaintiff's design shows slightly longer and wider pods. Additionally, the center pod containing the main entrance is relatively larger in defendants' design. Even so, the width of the footprints, aside from the hammerheads, is virtually identical. Moreover, the overall look and feel of the two footprint

designs are similar, even though defendants' is not as symmetrical. Compare Ex. A-2 to Ex. B-8; see also Pl.'s Br. 3.

As discussed, plaintiff has provided an adequate showing that their "starship" footprint is more than a simple geometric shape; it is complex and arguably original, and therefore plausibly protectable. The scope of protection for plaintiff's design is, therefore, broad; accordingly, the designs need not be virtually identical in order to plausibly deserve protection. Few external constraints affect the footprint design or placement, further supporting broad protection. Thus, to the extent defendants' design strongly resembles elements of plaintiff's design, including but not limited to the "starship" footprint, the court finds plaintiff has successfully supported its claim of copyright infringement. The court is satisfied the parties' Site plans are extrinsically/objectively similar enough to survive defendants' motion.

//

//

//

//

//

//

//

//

CONCLUSION

Plaintiff has sufficiently stated a plausible claim for copyright infringement pursuant to Fed. R. Civ. P. 12(b)(6). Accordingly, defendants' motion to dismiss is DENIED.

IT IS SO ORDERED.

Dated this 23ʳᵈ day of September, 2015.

_____
Ann Aiken
United States District Judge